UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HERSON GONZALEZ,<br>    *Defendant*. | No. 3:17-cr-00062 (JAM) |

ORDER DENYING MOTION FOR
SENTENCE REDUCTION WITHOUT PREJUDICE

Herson Gonzalez is a federal prisoner who has filed a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). He seeks to serve the rest of his prison sentence in home confinement in light of his medical condition and the risk of harm he faces from the rapidly spreading coronavirus disease ("COVID-19"). But Gonzalez has not exhausted the procedures that the statute requires before he may file a motion for release to home confinement. Because these procedures are mandatory, the law is clear that I do not have discretion to excuse or waive them because of the emergency nature of the COVID-19 crisis or because his request for relief from the prison warden will likely be futile. Therefore, I will deny Gonzalez's motion without prejudice to renewal after he complies with the statute's requirements.

**BACKGROUND**

On October 2, 2018, I sentenced Gonzalez principally to a term of four years of imprisonment following his guilty plea to a charge of conspiracy to distribute heroin. He is a cancer survivor, having had a salivary gland tumor, radiation treatment, and a feeding tube for approximately one year until shortly before his sentencing.

In light of his recent cancer, I recommended at sentencing that the Federal Bureau of Prisons ("BOP") designate Gonzalez to one of its medical centers. He was designated instead to

1

the Federal Correctional Institution at Allenwood ("FCI Allenwood") in Pennsylvania, where he has completed the residential drug abuse treatment program. He is eligible for release to a halfway house on May 21, 2020, and is scheduled to complete his imprisonment sentence on November 15, 2020.

On April 14, 2020, counsel for Gonzalez wrote to the warden of FCI Allenwood to seek Gonzalez's early release from imprisonment because of Gonzalez's medical condition that makes him unusually vulnerable to the COVID-19 virus. Doc. #999-2.[1] The letter to the warden described Gonzalez's reentry plan to live at the home of his significant other and their five-year-old daughter.

Gonzalez asked the warden to grant either of two forms of relief. First, Gonzalez contended that his particular vulnerability to COVID-19 was an "extraordinary and compelling" reason for a sentence reduction that warranted the filing of a motion by the BOP for such a reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). Alternatively, Gonzalez sought a transfer to home confinement pursuant to section 12003(b)(2) of the CARES Act and in accordance with memoranda of the U.S. Attorney General that prescribe the criteria for the BOP to transfer to home confinement certain inmates most vulnerable to COVID-19.[2]

On April 16, 2020, counsel for Gonzalez called the BOP's regional counsel to inquire about the status of the request. Following a telephone call with a supervisory staff attorney from the BOP's regional counsel office, counsel for Gonzalez emailed the attorney stating, "I would

---

[1] *See also* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk html [https://perma.cc/4EBN-JFYN] (last visited Apr. 30, 2020) (noting people who are immunocompromised are at higher risk of severe illness from COVID-19).

[2] The Attorney General's memoranda dated March 26 and April 3, 2020, are posted to the BOP's website. *See* Federal Bureau of Prisons, *Frequently Asked Questions*, https://www.bop.gov/coronavirus/faq.jsp [https://perma.cc/9MVV-KQSH] (last visited Apr. 30, 2020).

appreciate any information you can provide about the status of BOP's response to [Gonzalez's] request for home confinement or compassionate release." Doc. #999-3 at 2. The BOP attorney responded in relevant part as follows:

> Inmates are being automatically reviewed for home confinement and do not need to apply to be considered for home confinement. Note, there is no additional criteria, policy or other customized consideration at this time for RIS [reduction in sentence] requests based on COVID-19. To be approved they would have to apply for and meet one of the existent, traditional criterial set forth in BOP PS [Program Statement] 5050.50 (attached). The COVID "at-risk" considerations and criteria from AG [Attorney General] Barr's memos are within the context of home confinement and furlough transfers and do not expand RIS criteria.

*Ibid.*

On April 21, 2020, Gonzalez filed an emergency motion for release under 18 U.S.C. § 3582(c)(1)(A). The parties have filed extensive briefing, and I conducted a video argument with counsel on April 24, 2020.

## DISCUSSION

I will first review the statutory and regulatory framework that governs motions under 18 U.S.C. § 3582(c)(1)(A). Then I will address the parties' arguments concerning whether Gonzalez has exhausted the procedures that the statute requires before filing his motion and whether he may be excused from doing so.

### *Statutory and regulatory framework*

Federal law allows a court to grant a "compassionate release" motion to reduce a federal prisoner's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).[3]

---

[3] 18 U.S.C. § 3582(c)(1)(A)(i) provides in full:

(c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--
    (1) in any case--

Previously it was only the BOP that could file this kind of motion, but amidst widespread complaints about the failure of the BOP to file motions on prisoners' behalf, Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), to allow prisoners the right to file their own motions for a sentence reduction. *See United States v. Almontes*, 2020 WL 1812713, at *1 (D. Conn. 2020).

Importantly, however, Congress conditioned the right of a sentenced defendant to file a motion upon the defendant having first applied to the prison warden to file a motion on the defendant's behalf. Specifically, the law allows for a defendant's motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Whether a motion is filed by the BOP or ultimately by a defendant, section 3582(c)(1)(A) establishes several criteria for a court to consider when deciding whether to grant the motion. First of all, there has to be no less than "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[4] The statute does not further define this term

---

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>     (i) extraordinary and compelling reasons warrant such a reduction;
>     ….
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; ….

[4] As an alternative to the existence of such "extraordinary and compelling reasons," section 3582(c)(1)(A) allows for motions to be filed by the BOP on behalf of defendants who are at least 70 years old and have served at least 30 years in prison. 18 U.S.C. § 3582(c)(1)(A)(ii). This alternative is not at issue in this case.

but instructs courts to consider whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress has separately directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," while also advising that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In accordance with this instruction from Congress, the Sentencing Commission has issued a policy statement in the U.S. Sentencing Guidelines that sets forth criteria for what constitutes "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13 cmt. n.1 (2018). Application Note 1(A) of the relevant policy statement explains that a defendant's medical condition may constitute an extraordinary and compelling reason for a sentence reduction if the defendant "is suffering from a terminal illness" or if the defendant otherwise has a serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Ibid.* cmt. n.1(A) (including more particularized criteria for these circumstances).

The application note to the Sentencing Guidelines policy statement goes on to describe other circumstances that may qualify as extraordinary and compelling reasons, such as a defendant's old age and length of sentence already served, *ibid.* cmt. n.1(B), or a change in the defendant's family circumstances from the death or incapacitation of a family member where the defendant may be the only available caregiver for a minor or spouse, *ibid.* cmt. n.1(C). Lastly, the application note provides for a catch-all "Other Reasons" that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and

compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Ibid.* cmt. n.1(D).[5]

Beyond a court's determination whether there exists "extraordinary and compelling reasons" for a sentence reduction, a court must also "consider[] the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Therefore, a court must examine the same factors it did when it sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation. *See* 18 U.S.C. § 3553(a). In addition, a court must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

The Department of Justice has promulgated regulations that govern the BOP's actions with respect to requests by prisoners for the BOP to file a motion for sentence reduction. *See* 28 C.F.R. §§ 571.60 to 571.64. And the BOP itself has issued Program Statement 5050.50, which elaborates on its procedures and criteria for deciding whether to file a motion for reduction in sentence on a prisoner's behalf. Doc. #999-4.[6]

---

[5] As numerous courts have recognized, to the extent that Application Note 1(D) suggests that it is solely up to the Director of the Bureau of Prisons to decide if "Other Reasons" amount to an "extraordinary and compelling reason" for a sentence reduction, the Sentencing Guidelines have not yet been revised to conform with the First Step Act's authorization for defendants to bring their own motions, and any language in the Guidelines application note that purports to vest exclusive authority to make a determination with the Bureau of Prisons rather than a court is no longer applicable. *See United States v. Marks*, 2020 WL 1908911, at *5-7 (W.D.N.Y. 2020); *United States v. Haynes*, 2020 WL 1941478, at *14 (E.D.N.Y. 2020) (collecting cases); *United States v. Pinto-Thomaz*, --- F. Supp. 3d ----, 2020 WL 1845875, at *2 (S.D.N.Y. 2020) (same); *Almontes*, 2020 WL 1812713, at *3 (same).

[6] *See also* Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited Apr. 28, 2020).

As relevant here, section 3 of Program Statement 5050.50 describes the circumstances that the BOP will consider when determining whether to file a compassionate release motion for "Requests Based on Medical Circumstances." It states that such circumstances "may include" a prisoner's "Terminal Medical Condition" or a prisoner's "Debilitated Medical Condition." Doc. #999-4 at 5-6. These two categories correspond to the two types of medical conditions that the Sentencing Guidelines policy statement describes as constituting "extraordinary and compelling reasons" for a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A).[7]

Beyond these two types of medical circumstances, the BOP Program Statement—like the application note to the Sentencing Guidelines policy statement—does not describe any other kinds of a defendant's medical circumstances that may suffice to establish "extraordinary and compelling reasons" for a sentence reduction. Although the Sentencing Guidelines application note allows for the possibility that the BOP Director may identify "Other Reasons" constituting "extraordinary and compelling reasons" for a sentence reduction, *see* U.S.S.G. § 1B1.13 cmt. n.1(D), the BOP Program Statement does not refer to any such "Other Reasons" that may warrant a motion to reduce a prisoner's sentence. Neither the Guidelines nor the Program Statement have been updated in any manner to account for the COVID-19 crisis.

*Exhaustion*

The Government argues that Gonzalez has not exhausted his administrative remedies as required under section 3582(c)(1)(A). In *United States v. Vence-Small*, --- F. Supp. 3d ----, 2020

---

[7] The BOP Program Statement goes into more detail than the Sentencing Guidelines application note in describing what constitutes a qualifying "Terminal Medical Condition" or a "Debilitated Medical Condition." The BOP Program Statement defines a "Terminal Medical Condition" in relevant part to mean that a defendant has been "diagnosed with a terminal, incurable disease and whose life expectancy is eighteen (18) months or less, and/or has a disease or condition with an end-of-life trajectory under 18 USC § 3582(d)(1)." Doc. #999-4 at 5. It defines a "Debilitated Medical Condition" to mean that the defendant is "[c]ompletely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair," or is "[c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." *Id.* at 6.

WL 1921590 (D. Conn. 2020), I recently ruled that section 3582(c)(1)(A) creates a mandatory statutory exhaustion requirement for which judges are not free to make equitable exceptions. *Id.* at *4 (citing *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016)). I discussed why dicta in *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019), does not justify a different result and why even the emergency nature of the COVID-19 crisis does not override the statutory requirement that a defendant must wait before filing her motion for at least 30 days after the defendant has requested that the warden file a motion on her behalf. *See Vence-Small*, 2020 WL 1921590, at *4-6.

In *Vence-Small*, I also discussed why contrary court decisions that have interpreted the statute to allow for an emergency exception are not convincing. *Id.* at *5-6. Gonzalez cites two more recent court decisions. *See United States v. Bess*, 2020 WL 1940809 (W.D.N.Y. 2020); *United States v. Scparta*, --- F. Supp. 3d ----, 2020 WL 1910481 (S.D.N.Y. 2020). But both these decisions principally rely on two earlier decisions, *United States v. Russo*, 2020 WL 1862294 (S.D.N.Y 2020), and *United States v. Haney*, --- F. Supp. 3d. ----, 2020 WL 1821988 (S.D.N.Y. 2020), that I reviewed and explained why they are not persuasive. *See Vence-Small*, 2020 WL 1921590, at *5.

Gonzalez argues that he has satisfied the exhaustion requirement because of the email response he received from the staff attorney with the BOP's regional counsel office. He points to a provision of the applicable regulations stating that "[w]hen an inmate's request for consideration under . . . [section] 3582(c)(1)(A) is denied by the General Counsel, the General Counsel shall provide the inmate with a written notice and statement of reasons for the denial," and "[t]his denial constitutes a final administrative decision." 28 C.F.R. § 571.63(b).

I am not convinced that the BOP attorney's email constitutes a "denial" of Gonzalez's letter-request to the warden, especially in the absence of any action taken by the warden in response to the request as contemplated under the remedial scheme. *See* 28 C.F.R. §§ 571.61, 571.62. The BOP attorney's email is drafted in terms of furnishing background information about the applicable legal framework and does not purport to be a prisoner-specific decisional communication. Nor has it been shown that the BOP staff attorney is vested with delegated authority to issue a final decision on behalf of the General Counsel of the BOP, as required for legal effect under section 571.63(b) of the regulations. 28 C.F.R. § 571.63(b). Gonzalez did not fully exhaust his administrative remedies or wait at least 30 days as section 3582(c)(1)(A) requires.

In supplemental briefing, Gonzalez additionally argues that he should not have to exhaust his remedies because exhaustion would be futile. In light of the BOP Program Statement and the materials submitted by Gonzalez, I agree that there is very little likelihood that the BOP will file a motion for sentence reduction on his behalf (or for any prisoner who is only at risk of contracting COVID-19 rather than having a medical condition that has already progressed to the point of constituting a Terminal Medical Condition or Debilitated Medical Condition). But this does not mean that I may excuse Gonzalez from complying with section 3582(c)(1)(A)'s exhaustion requirements. As the Supreme Court has explained in the statutory exhaustion context: "[t]hat Congress has mandated exhaustion . . . is at odds with traditional doctrines of administrative exhaustion," so "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).

In light of the nature of mandatory statutory exhaustion principles (as distinct from traditional judge-made principles of exhaustion), the Supreme Court in *Booth* declined to allow for a futility exception to the Prison Litigation Reform Act's exhaustion requirement despite the fact that prison authorities were concededly powerless to award money damages, which was the only type of relief sought by the prisoner plaintiff. *See also Theodoropoulos v. INS*, 358 F.3d 162, 172 (2d Cir. 2004) (rejecting futility exception to exhaustion requirement in Immigration and Nationality Act because such an exception is "simply not available when the exhaustion requirement is statutory" in nature).

To be sure, the Supreme Court in *Booth* allowed for the possibility that there may be extreme circumstances warranting a futility exception to a statutory exhaustion requirement, noting that "neither [party] argues that exhaustion is required where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." 532 U.S. at 736. But those extreme circumstances do not exist here. The BOP has the legal authority to file a compassionate release motion on Gonzalez's behalf.[8] And even if the BOP chooses in its discretion not to file a motion on Gonzalez's behalf, it has discretionary authority to respond in other ways to his request for compassionate release. It may grant him home confinement as now allowed under section 12003(b)(2) of the CARES Act (even if it has

---

[8] Section 3582(c)(1)(A) expressly gives the BOP this authority, and the application note to the Sentencing Guidelines policy statement makes clear that the BOP may find that "extraordinary and compelling reasons" exist for "Other Reasons" than whether the prisoner's medical condition meets the criteria for a terminal or debilitated medical condition. *See* U.S.S.G. § 1B1.13 cmt. n.1(D). Although the BOP Program Statement 5050.50 does not outline what such "Other Reasons" may be, it does not expressly preclude reliance on other reasons. For example, section 3 of the Program Statement ("Requests Based on Medical Circumstances") describes how qualifying medical conditions "may include" a Terminal Medical Condition or a Debilitated Medical Condition but without further stating that no other medical condition may qualify. Doc. #999-4 at 5. Similarly, section 7 of the Program Statement ("Factors and Evaluation of Circumstances in RIS Requests") lists a range of factors to consider while cautioning that "these factors are neither exclusive nor weighted." *Id.* at 13. The upshot is that, even if the BOP in its discretionary determination whether to file a motion on a prisoner's behalf has decided not to expand the range of qualifying medical conditions beyond a Terminal Medical Condition or a Debilitated Medical Condition, this is not because the statute, the Guidelines, or the Program Statement bar the BOP from doing so.

10

declined to do so to date). Or it may take additional precautions at the prison to protect him against the risk of contracting COVID-19 in light of the particular health vulnerabilities that Gonzalez describes in his request to the warden.

Therefore, as in *Booth*, even if it is a foregone conclusion that the administrative process will not result in the specific relief requested by Gonzalez, "[t]he parties do not dispute that the . . . grievance system at issue in this case has authority to take some responsive action with respect to the type of allegations [the prisoner] raises." 532 U.S. at 736 n.4. That is enough to preclude a futility exception in the context here of a mandatory statutory exhaustion requirement.

Moreover, section 3582(c)(1)(A) requires a defendant *either* to fully exhaust the administrative appeal process *or* to wait 30 days after initiating the administrative process before filing a motion. The fact that Congress itself has imposed a 30-day waiting time rule as an alternative to plenary exhaustion of the BOP administrative process suggests that Congress has already balanced the expected benefits of an exhaustion requirement with the possibility that a prisoner's request for relief from the BOP could well be futile. And Congress evidently decided that, rather than tasking judges with making case-by-case evaluations about whether a particular prisoner's request for the warden to file a motion would be futile, the remedy for a futility concern is that a prisoner need not wait more than 30 days before seeking judicial relief. *See United States v. Roberts*, 2020 WL 1700032, at *2 (S.D.N.Y. 2020) (denying motion for failure to exhaust and noting that the statute "itself includes a futility-like exception" in the form of its 30-day waiting time rule).

All in all, I conclude that Gonzalez has not yet exhausted the administrative procedure that is required for him to file a motion for a sentence reduction under section 3582(c)(1)(A).

The statute's requirements are mandatory, and I cannot create "emergency" or "futility" exceptions that Congress did not enact or intend.

## CONCLUSION

For the foregoing reasons, the Court DENIES the motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) without prejudice to renewal of the motion on May 14, 2020—which is 30 days after Gonzalez's request for relief to the warden. In the event that Gonzalez files a motion on May 14, 2020, then the Government is requested to file any response on May 15, 2020. In the meantime, if the Government decides to waive any objection to the exhaustion requirements, then the Court will expedite consideration of any earlier-filed motion.

It is so ordered.

Dated at New Haven this 30th day of April 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge