UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HERSON GONZALEZ,<br>    *Defendant*. | No. 3:17-cr-00062 (JAM) |

**ORDER GRANTING MOTION FOR RELEASE**

Herson Gonzalez is a prisoner of the Federal Bureau of Prisons ("BOP"). In light of his particular vulnerability to the rapidly spreading coronavirus ("COVID-19"), he moves under 18 U.S.C. § 3582(c)(1)(A) for a reduction of his remaining term of imprisonment to a term of home confinement. I will grant the motion for a reduction of sentence to a sentence of time served as of May 21, 2020, with five years of supervised release to follow and the first six months of supervised release to be spent in home confinement subject to electronic monitoring.

**BACKGROUND**

On October 2, 2018, I sentenced Gonzalez principally to a term of four years of imprisonment following his guilty plea to a charge of conspiracy to distribute heroin. He is a survivor of cancer, having had a tumor of his salivary glands, radiation treatment, and the insertion of a feeding tube for approximately one year until shortly before the sentencing.

In light of his recent recovery from cancer, I recommended at sentencing that he be designated to a BOP medical center. He was designated instead to FCI Allenwood Medium ("Allenwood") in Pennsylvania where he has successfully participated in the residential drug abuse treatment program. He is eligible for release to a halfway house on May 21, 2020, and to complete his sentence of imprisonment on November 15, 2020.

In light of the COVID-19 crisis, counsel for Gonzalez wrote to the warden of Allenwood on April 14, 2020, to seek Gonzalez's early release from imprisonment because of his unusual vulnerability to the COVID-19 virus.[1] Gonzalez's letter to the warden described his reentry plan to live at the home of his significant other (Melissa Cyganik) and their five-year old daughter.

I previously denied Gonzalez's motion for a sentence reduction because of his failure to exhaust the procedures as required under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Gonzalez*, 2020 WL 2079110 (D. Conn. 2020). But because 30 days have since elapsed from Gonzalez's request to the warden, his renewed motion is now ripe for the Court's consideration.

### DISCUSSION

I will first review the statutory and regulatory framework that governs motions under 18 U.S.C. § 3582(c)(1)(A). Then I will address how these factors apply to Gonzalez in this case.

### *Statutory and regulatory framework*

Federal law allows a court to grant a "compassionate release" motion to reduce a federal prisoner's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Previously it was only the BOP that could file this kind of motion, but amidst widespread complaints about the failure of the BOP to file motions on prisoners' behalf, Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), to allow prisoners the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf. *See United States v. Almontes*, 2020 WL 1812713, at *1 (D. Conn. 2020).

---

[1] *See also* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk html [https://perma.cc/4EBN-JFYN] (last visited May 15, 2020) (noting people who are immunocompromised are at higher risk of severe illness from COVID-19).

Provided that a prisoner has satisfied the statute's exhaustion requirement, section 3582(c)(1)(A) establishes several criteria for a court to consider when deciding whether to grant the motion. First of all, there has to be no less than "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[2] The statute does not further define this term but instructs courts to consider whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Ibid.* Congress has separately directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," while also advising that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In accordance with this instruction from Congress, the Sentencing Commission has issued a policy statement in the U.S. Sentencing Guidelines that sets forth criteria for what constitute "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13 cmt. n.1 (2018). The commentary provides, for example, that "extraordinary and compelling reasons" exist if the defendant "is suffering from a terminal illness" or if the defendant otherwise has a serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Ibid.* cmt. n.1(A). The commentary further provides for a catch-all "Other Reasons" that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Ibid.* cmt. n.1(D).

---

[2] As an alternative to the existence of such "extraordinary and compelling reasons," section 3582(c)(1)(A) allows for motions to be filed by the BOP on behalf of defendants who are at least 70 years old and have served at least 30 years in prison. 18 U.S.C. § 3582(c)(1)(A)(ii). This alternative is not at issue in this case.

As numerous courts have recognized, the Sentencing Guidelines have not yet been revised to conform with the First Step Act's authorization for defendants to bring their own motions. Therefore, to the extent that the Guidelines commentary purports to vest exclusive authority with the BOP to make a determination of "Other Reasons," this requirement is no longer applicable, and courts have independent authority to decide whether there are "Other Reasons" that amount to "extraordinary and compelling reasons" to grant a motion for sentence reduction. *See United States v. Marks*, 2020 WL 1908911, at *5-7 (W.D.N.Y. 2020); *United States v. Haynes*, 2020 WL 1941478, at *14 (E.D.N.Y. 2020) (collecting cases); *United States v. Pinto-Thomaz*, --- F. Supp. 3d ----, 2020 WL 1845875, at *2 (S.D.N.Y. 2020) (same); *Almontes*, 2020 WL 1812713, at *3 (same).

Beyond a court's determination whether there exists "extraordinary and compelling reasons" for a sentence reduction, a court must also "consider[] the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Therefore, a court must examine the same factors it did when it initially sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation. *See* 18 U.S.C. § 3553(a). In addition, a court must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

### *Factors applying to Herson Gonzalez*

I first address whether Gonzalez has shown "extraordinary and compelling" reasons that could warrant a sentence reduction. There is no doubt that the COVID-19 pandemic is

extraordinary, having killed tens of thousands of people in the United States in recent weeks. It is clear as well that Gonzalez's immunocompromised medical condition renders him significantly more vulnerable than the average person to contract COVID-19 and also to suffer the worst of its complications.

Nor is there doubt that a congregate prison environment is inherently unsuited to protecting against the COVID-19 virus. The virus is particularly insidious because of its invisible transmission by people who are infected but who do not feel or show any ill effect. Notwithstanding the substantial precautions taken by the BOP to reduce the likelihood of an outbreak at its facilities, the fact remains that prisons are like tinderboxes where a virus may spread rapidly once a single person is infected.

To be sure, the BOP has reported to date only one confirmed COVID-19 test result at Allenwood.[3] But because of the general lack of testing and prevalence of COVID-19 among asymptomatic persons, it seems reasonably likely from the single positive test result that there is some ongoing COVID-19 infiltration at Allenwood. *See, e.g.*, *Martinez-Brooks v. Easter*, 2020 WL 2405350, at *20 (D. Conn. 2020) (describing surprisingly high proportion of positive test results for inmates at FCI Danbury after widespread testing was instituted). Gonzalez notes without contradiction that Allenwood is also currently operating at significantly above its reported capacity. Doc. #1005 at 9.

In light of the COVID-19 crisis and Gonzalez's medical condition, the Government does not dispute that "extraordinary and compelling reasons" exist for purposes of section 3582(c)(1)(A). Doc. #1004 at 12. Instead, the Government contends that Gonzalez poses a danger to the community and that his release plan is inadequate. *Ibid.* The Government points to

---

[3] *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited May 15, 2020).

Gonzalez's extensive criminal history (Criminal History Category VI with 24 criminal history points) and notes from incidents recounted in the presentence report "a pattern whereby [Gonzalez] is quick to resort to anger, unwilling to follow the law and court instructions, engages in threaten[ing]/intimidating behavior, and is unable to control himself." *Id.* at 12-13. In addition, the Government raises a concern about the fact that Gonzalez's reentry plan contemplates his return to live with Melissa Cyganik against whom he has previously engaged in domestic violence. *Id.* at 13.

In response to these concerns, Gonzalez points to the absence of any incident reports during his time in custody and the substantial success he had in the BOP's intensive residential drug abuse treatment program as reflected in extensive comments in BOP records. Doc. #1005 at 4. During the court hearing on April 24, 2020, I heard from Melissa Cyganik that she does not fear Gonzalez and wishes Gonzalez to live with her and their daughter at her home.

I have considered all of the sentencing factors. As to what is a just punishment and deterrence, I conclude that Gonzalez has served a significantly punitive sentence—he was sentenced to a four-year prison sentence and now has only six months remaining. The interests of rehabilitation are not advanced by his continuation in BOP custody. Because of the COVID-19 crisis, there are no more prison programs for him, and it does not appear likely that he will be released to a halfway house as would ordinarily have occurred as soon as next week. Instead, he would likely remain under severe and non-rehabilitative conditions of confinement while the Allenwood facility—like all BOP facilities—engages in lockdown procedures to reduce the likelihood of more COVID-19 infections.

All in all, I can understand why the Government opposes Gonzalez's release but I am persuaded on balance that he should be released. The purposes of sentencing have been largely

served, and I credit the word of Melissa Cyganik that Gonzalez will not harm her. Provided that Gonzalez quarantines himself for the first 14 days while at home and is subject to electronic monitoring by the U.S. Probation Office, he does not pose a significant risk of danger to others for the interim period of time between May 21, 2020 (the date when he would otherwise have been released to a halfway house), and November 15, 2020 (the date when he would otherwise be subject to release from BOP custody). Accordingly, I will grant his motion for reduction in sentence to time served as of May 21, 2020.

## CONCLUSION

For the foregoing reasons, the motion of defendant Herson Gonzalez for a reduction in sentence (Doc. #1016) is GRANTED. Gonzalez's sentence is reduced to a term of time served as of May 21, 2020, on which date the Federal Bureau of Prisons shall RELEASE Gonzalez from BOP custody to travel directly to the home of Melissa Cyganik and to commence his five-year term of supervised release. The Court amends his conditions of supervised release to provide that Gonzalez shall be on home confinement as a substitute for incarceration until November 15, 2020. He will be subject to monitoring using SmartLink technology or the equivalent. He will remain in his home except that he may leave home only for purposes of obtaining a COVID-19 test, obtaining emergency medical care, or for any other reason approved in advance in writing by the U.S. Probation Office. During the first 14 days of his release, Gonzalez shall quarantine himself in his home in a separate room without entering the space of other household members. All other conditions of supervised release as previously imposed by the Court shall remain in full force and effect. The Court advises that it is highly likely to order Gonzalez's re-imprisonment in the event of any material violation of the home confinement conditions.

It is so ordered.

Dated at New Haven this 15th day of May 2020.

/s/ *Jeffrey Alker Meyer*  
Jeffrey Alker Meyer  
United States District Judge